ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| FIRSTBANK PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>**JOSÉ EDGARDO LEÓN HERNÁNDEZ** T/C/C JOSÈ E. LEÓN HERNÁNDEZ, SUCESIÓN DE IVETTE DURÁN TORRES, RAQUEL SOSTRA DURAN, COMO MIEMBRO DE LA SUCESIÓN Y OTROS<br><br>Parte Peticionaria | TA2025CE00532 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV07969<br><br>Sala: 508<br><br>Sobre:<br><br>Ejecución de Hipoteca (propiedad residencial) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. José Edgardo León Hernández (en adelante, el "señor León Hernández" o el "Peticionario"), mediante recurso de *Certiorari* presentado el 1 de octubre de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 24 de junio de 2025 y notificada el mismo día. A través del aludido dictamen, el TPI declaró "No Ha Lugar" la solicitud de desestimación presentada por el Peticionario.

Por los fundamentos que expondremos a continuación, se *expide* el recurso de *certiorari* y se *confirma* el dictamen recurrido.

**I.**

El presente caso tiene su origen el 2 de septiembre de 2022, fecha en que FirstBank (en adelante, "FirstBank" o "Recurrido") presentó una "**Demanda**" de cobro de dinero y ejecución de hipoteca en contra del señor

León Hernández, por sí y como miembro de la Sucesión de la Sra. Ivette Durán Torres, la Sra. Raquel Sostra Durán (en adelante, la "señora Sostra Durán"), como miembro de la aludida Sucesión, el Centro de Recaudación de Ingresos Municipales (CRIM) y otros integrantes desconocidos de la Sucesión. En la misma, FirstBank arguyó que el señor León Hernández y la señora Durán Torres suscribieron un pagaré hipotecario a favor del Recurrido, el cual fue posteriormente adquirido por Federal National Mortgage Association t/c/c Fannie Mae.

En síntesis, FirstBank alegó que la parte demandada incumplió con los términos del préstamo que les fue concedido, por haber dejado de efectuar los pagos acordados. Indicó que, a raíz de lo anterior, declaró vencido y exigible la totalidad del préstamo. Sostuvo que FirstBank era la entidad con derecho a exigir el cumplimiento del instrumento por ser su tenedor y que es el custodio del pagaré antes mencionado, cuya copia es fiel y exacta a su original. Expuso que, al 15 de junio de 2022, la deuda ascendía a $57,510.99 en principal, con intereses al 5% y $857.23 en cargos por mora, ambas cantidades sujetas a acumulación hasta el saldo total; sumándose además $8,880.00 por concepto de honorarios de abogado. FirstBank anejó a la "**Demanda**" el pagaré, y expresó que estaba disponible para ser inspeccionado por el Tribunal y la parte demandada si así lo solicitaba.[1]

El 28 de octubre de 2022, el señor León Hernández presentó una "**Moción solicitando se refiera el presente caso al proceso de mediación**". En igual fecha, notificada el 1 de noviembre de 2022, el TPI emitió una *Orden* mediante la cual refirió el caso a un Centro de Mediación de Conflictos.

Por su parte, el 15 de noviembre de 2022, el señor León Hernández presentó su "**Contestación a Demanda**". Entre otros planteamientos, alegó que no adeuda las cantidades reclamadas, por considerarlas improcedentes, carentes de justificación y desproporcionadas. Sostuvo que el inmueble en controversia constituye su residencia principal, razón por la

---

[1] *Véase*, Apéndice de la Petición de *Certiorari*, Entrada Núm. 1 SUMAC TPI.

cual solicitó que el caso fuera referido al Centro de Mediación y Conflicto, al amparo de la Ley Núm. 184-2012, según enmendada, 32 LPRA sec. 2881 *et seq.*, y el Reglamento de Métodos Alternos para la Solución de Conflictos, según enmendado, 4 LPRA Ap. XXIX.

Luego de varios trámites procesales, el señor León Hernández desistió del proceso de mediación. Así las cosas, el 20 de octubre de 2023, FirstBank presentó una "**Moción en Solicitud de Sentencia**". Por otro lado, el 18 de diciembre de 2023, el señor León Hernández presentó su "**Oposición a Sentencia Sumaria**". Asimismo, las partes presentaron sus correspondientes mociones de réplica y dúplica.

Estando pendiente de determinación la solicitud de sentencia sumaria interpuesta por FirstBank, el señor León Hernández presentó una "**Urgente Solicitud de Desestimación por Falta de Jurisdicción del Tribunal por: 1. Falta de parte indispensable; 2. Falta de Legitimación Activa; & 3. Falta de Fianza de no residente**", al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2 (5).[2] En síntesis, argumentó que, toda vez que Fannie Mae es el dueño del pagaré objeto de la reclamación, debía desestimarse la "**Demanda**" incoada por falta de parte indispensable y ausencia de legitimación activa. En consecuencia, planteó que, si bien FirstBank posee el pagaré físicamente, ello no implica que pueda ejecutar el mismo. A su vez, arguyó que el Recurrido está en posesión del pagaré como mero custodio y no como un tenedor o persona con derechos de un tenedor, según requerido por la Ley Núm. 208-1995, según enmendada, conocida como la "Ley de Transacciones Comerciales", 19 LPRA secs. 401 *et seq* (en adelante, "Ley de Transacciones Comerciales"). Por consiguiente, sostuvo que FirstBank no había mostrado evidencia donde se le delegan los derechos de un tenedor. Finalmente, razonó que, aunque el Recurrido sea representante, agente de servicio o contratista independiente residente en nuestra jurisdicción, lo anterior no subsana la cualidad de no residente de Fannie Mae. Por tanto, alegó que era indispensable el requerimiento de fianza.

---

[2] *Véase*, Apéndice de la Petición de *Certiorari*, Entrada Núm. 52 SUMAC TPI.

En reacción, el 19 de noviembre de 2024, FirstBank presentó su "**Oposición a Moción de Desestimación**".[3] En esta, argumentó que, es improcedente exigirle al portador de un pagaré que "alegue y presente prueba para establecer que es el dueño de tal pagaré o que es tenedor de buena fe, […] toda vez que la posesión, por sí sola, equivale a ostentar el título y le confiere al portador la legitimación para exigir la obligación". En esa línea, sostuvo que la Ley de Transacciones Comerciales reconoce que la persona que se encuentra en posesión del pagaré tiene derecho a exigir el cumplimiento de dicho instrumento. Adujo que incidió en su análisis el señor León Hernández al interpretar que el término "tenedor" es equiparable al concepto de "dueño" en materia de instrumentos negociables. Explicó que al ser FirstBank el tenedor actual del pagaré, es y ha sido desde el inicio del pleito, el único y exclusivo demandante. De manera que, la fianza de no residente no procedía en estricto derecho. Por último, resaltó que a pesar de que Fannie Mae es identificado como el dueño del pagaré en cuestión no lo hace automáticamente parte indispensable, ya que FirstBank como agente de servicio y tenedor de éste, está legitimado para comparecer de manera independiente. Por ello, solicitó que se declarara a FirstBank como tenedor y parte demandante legitimada; denegara la imposición de fianza de no residente; y dictara sentencia sumaria, según solicitada el 20 de octubre de 2023.

Evaluadas las posturas de ambas partes, el TPI emitió una *Resolución* en la que decretó "No Ha Lugar" la moción de desestimación presentada por el Peticionario.[4] Insatisfecho, el 2 de julio de 2025, el señor León Hernández presentó una "**Solicitud de Reconsideración & Vista Argumentativa**" y el 27 de agosto de 2025, FirstBank presentó "**Moción en Oposición a Reconsideración y Vista Argumentativa**". El 9 de septiembre de 2025, el TPI emitió *Orden* mediante la cual denegó la solicitud de reconsideración.

---

[3] *Véase*, Apéndice de la Petición de *Certiorari*, Entrada Núm. 59 SUMAC TPI.
[4] *Véase*, Apéndice de la Petición de *Certiorari*, Entrada Núm. 61 SUMAC TPI.

Inconforme con la determinación del foro primario, el señor León Hernández presentó el recurso que nos ocupa, mediante el cual le imputó la comisión de los siguientes errores:

A. **ERRÓ EL FORO *A QUO* AL NO APLICAR LOS PRECEDENTES DE ESTE TRIBUNAL EN (KLAN202200410 Y KLCE202300734) Y CONFERIRLE LEGITIMACIÓN ACTIVA A UNA PERSONA NO CONTEMPLADA EN LA SEC. 2-301 DE LA LTC Y QUIEN NO APORTÓ PRUEBA A FINES DE DEMOSTRAR QUE ESTÁ FACULTADO PARA EXIGIR EL INSTRUMENTO.**

B. **ERRÓ EL FORO *A QUO* AL NO ORDENAR LA PRESTACIÓN DE FIANZA DE NO RESIDENTE A FANNIE MAE, QUIEN OSTENA EL INTERÉS REAL Y SUSTANCIAL EN EL PAGARÉ OBJETO DE ESTE LITIGIO**.

El 14 de octubre de 2025, FirstBank presentó su "**Alegato en Oposición a Petición de *Certiorari***".

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 209 (2023). Así, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, y en aquellas instancias específicas que delimita la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones

cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, *supra*.

Dentro de este marco, el análisis del foro apelativo intermedio -al momento de considerar los asuntos planteados mediante el recurso de *certiorari*- no se efectúa en el vacío ni se aparta de otros parámetros. Rivera *et al.* v. Arcos Dorados *et al.*, *supra*, pág. 209; 800 Ponce de León v. AIG, 205 DPR 163, 176 (2020). Las delimitaciones que imponen estas

disposiciones reglamentarias tienen como objetivo intrínseco prevenir la "dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación". Mun. Caguas v. JRO Construction, Inc., 201 DPR 703, 712 (2019). Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009).

En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. S.L.G. Flores-Jiménez v. Colberg, 173 DPR 843, 865 (2008).

Así pues, conforme a la doctrina reseñada, la Regla 52.1 de Procedimiento Civil, *supra*, vislumbra la obligación de este Tribunal de entender en los méritos de determinaciones interlocutorias relacionadas con mociones dispositivas.

**B.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. 32 LPRA Ap. V, R. 10.2.

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar

su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, "recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda". González v. Mayagüez Resort & Casino, 176 DPR 848, 855 (2009) (citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, pág. 230).

De ahí que, al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, deba ser evaluada de forma crítica. Ello, puesto que el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio

alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". <u>Pressure Vessels PR. v. Empire Gas P.R.</u>, *supra*, pág. 505. Consecuentemente, se debe considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". <u>Íd</u>.

Ahora bien, si en una moción basada en la Regla 10.2 (5) de Procedimiento Civil, *supra*, se esbozan materias no contenidas en la alegación impugnada —y estas no son excluidas por el tribunal— la moción deberá ser considerada como una solicitud de sentencia sumaria. En consecuencia, estará sujeta a todos los trámites provistos en la Regla 36 de Procedimiento Civil hasta su resolución final. De manera que, todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. Regla 10.2 de Procedimiento Civil, *supra.*

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo." <u>Rosario Ortíz v. Nationwide Mutual Insurance Co.</u>, 158 DPR 775, 780-781 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. <u>Íd</u>*.,* pág. 780.

### C.

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. <u>Cobra Acquisitions, LLC v. Municipio de Yabucoa y otros</u>, 210 DPR 384, 394 (2022); <u>Pueblo v. Ríos Nieves</u>, 209 DPR 264, 273 (2022). Nuestro Más Alto Foro ha reiterado que para que un ente adjudicativo pueda resolver una controversia, ésta debe ser justiciable. <u>Bhatia Gautier v. Gobernador</u>, 199 DPR 59, 68 (2017). El principio de justiciabilidad requiere, entre otras cosas, que los tribunales evalúen si la parte que solicita un remedio posee legitimación activa.

Hernández Montañez v. Pares Alicea, 208 DPR 727, 738-739 (2022). Para ello, el Tribunal Supremo estableció que el promovente de una causa de acción debe demostrar que:

> (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. Íd., pág. 739.

El tribunal determinará si se cumple con dichos elementos, ya que este examen "es un mecanismo usado por los tribunales para delimitar su propia jurisdicción". Hernández Torres v. Hernández Colón, 131 DPR 593, 598 (1992). De no cumplir con ellos, el tribunal carecerá de jurisdicción pues, "[l]a intervención de los tribunales tendrá lugar solo si existe una controversia genuina entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas". Hernández Montañez v. Pares Alicea, *supra*, pág. 738.

**D.**

La Ley Núm. 210-2015, según enmendada, conocida como "Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico", 30 LPRA sec. 6001 *et seq.*, (en adelante, "Ley Núm. 210-2015"), establece que "[e]n los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". 30 LPRA sec. 6133. Así pues, es norma reiterada que el pagaré constituye un instrumento negociable, a tenor con lo dispuesto en la Sección 2-104 de la Ley de Transacciones Comerciales, 19 LPRA sec. 504. *Véase*, DLJ Mortgage v. SLG Santiago-Ortiz, 202 DPR 950, 963 (2019). Por tanto, las disposiciones del referido estatuto son aplicables al procedimiento de cobro de dinero evidenciado por un pagaré y la ejecución de la hipoteca que lo garantiza. 30 LPRA sec. 6133.

El pagaré que es objeto de este procedimiento judicial es pagadero al portador. Ello significa que "en lugar de designar a una persona a quien deba hacerse el pago, el instrumento inserta una **cláusula que permite a cualquier persona que tenga en su poder el instrumento, a exigir sin**

**más el pago**". M. R. Garay Aubán, <u>Derecho Cambiario, Instrumentos Negociables</u>, Ed. BiblioGráficas, 2009, págs. 69-70 (énfasis suplido); *véase*, Sección 2-109 de la Ley de Transacciones Comerciales, 19 LPRA sec. 509. El emisor de un pagaré está obligado a pagar el instrumento de acuerdo con sus términos al momento de su emisión. La obligación se deberá a una persona con derecho a exigir el cumplimiento del instrumento. Sección 2-412 de la Ley de Transacciones Comerciales, 19 LPRA sec. 662. La Ley de Transacciones Comerciales, en su Sección 2-301, enumera las siguientes personas como aquellas con derecho a exigir el cumplimiento de cualquier instrumento negociable:

> (i) el tenedor del instrumento, (ii) una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de la Sección 2-309 y de la Sección 2-418(d). Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento aunque la persona no sea el dueño del instrumento o lo posea indebidamente. 19 LPRA sec. 601.

Conforme ilustra el profesor Garay Aubán, el inciso (ii) antes mencionado implica que "[s]i el cedente de un instrumento es su tenedor, el cesionario, aunque no se convierta en tenedor, adquiere el status de *persona con derechos de un tenedor*, lo que le faculta a exigir el pago del instrumento, sujeto a las defensas que puedan oponer los obligados al pago". Garay Aubán, *op cit.*, pág. 137 (énfasis en el original).

Respecto a los instrumentos negociables, el estatuto define "tenedor" como "la persona en posesión del mismo si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo". Sección 1-201(20) de la Ley de Transacciones Comerciales, 19 LPRA sec. 451. El Tribunal Supremo de Puerto Rico ha reconocido que "**el tenedor de un instrumento negociable** --que es la obligación principal-- **tiene a su favor la presunción legal de que el pagaré es válido** y de que fué [sic] otorgado por causa justa y onerosa". <u>Pereira v. Commercial Transport Company, Inc.</u>, 73 DPR 326, 330 (1952) (énfasis suplido); <u>Arroyo Pratts v. Tribunal Superior</u>, 98 DPR 149,151 (1969).

Por su naturaleza, la Ley de Transacciones Comerciales regula lo relacionado a la cesión de los instrumentos negociables. En específico, establece que la cesión del instrumento ocurre "cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho a exigir el cumplimiento del instrumento". Sección 2-203 de la Ley de Transacciones Comerciales, 19 LPRA sec. 553(a). Así pues, la cesión "confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe". Sección 2-203 de la Ley de Transacciones Comerciales, 19 LPRA sec. 553(b). Destacamos que la referida ley igualmente establece que "[s]i un instrumento es pagadero al portador, el mismo puede negociarse mediante la cesión de la posesión solamente". 19 LPRA sec. 551(b). Al interpretar la referida disposición, el profesor Garay Aubán señala que no es necesario que el cedente endose el pagaré. Garay Aubán, *op cit.*, pág. 141.

Respecto a la prueba de las firmas y de la condición de tenedor de buena fe, la Sección 2-308 de la Ley de Transacciones Comerciales dispone que:

> (b) Si se admite o prueba la validez de las firmas y se cumple con la subsección (a), un demandante que produzca el instrumento tiene derecho al pago si prueba que tiene autoridad para exigir cumplimiento del instrumento bajo la Sección 2-301, a menos que el demandado pruebe una defensa o una reclamación por resarcimiento. Si se prueba una defensa o una reclamación por resarcimiento, el derecho a cobro del demandante estará sujeto a la defensa o reclamación, salvo en la medida que el demandante pruebe que tiene los derechos de un tenedor de buena fe que no están sujetos a la defensa o reclamación. 19 LPRA sec. 608.

**E.**

La fianza ha sido descrita por nuestro máximo foro como "una garantía que bien a manera de obligación, depósito en dinero [...] o derecho real[,] se establece para asegurar el cumplimiento de una obligación que dimana del proceso". Martajeva v. Ferré Morris y otros, 210 DPR 612, 622 (2022) (citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 6ta ed., Puerto Rico, Ed. LexisNexis, 2017, pág. 196). En lo pertinente, la Regla 69.5 de Procedimiento Civil dispone lo siguiente:

> Cuando la parte reclamante resida fuera de Puerto Rico o sea una corporación extranjera, el tribunal requerirá que preste fianza para garantizar las costas, los gastos y los honorarios de abogados a que pueda ser condenada. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil (1,000) dólares. El tribunal podrá ordenar que se preste una fianza adicional si se demuestra que la fianza original no es garantía suficiente, y los procedimientos en el pleito se suspenderán hasta que se preste dicha fianza adicional.

> Transcurridos sesenta (60) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional sin que ésta haya sido prestada, el tribunal ordenará la desestimación del pleito. […] 32 LPRA Ap. V, R. 69.5.

En este sentido, la aludida fianza tiene como objetivo ofrecer cierta protección "a quienes son demandados por personas que no residen en Puerto Rico". VS PR, LLC v. Drift-Wind, 207 DPR 253, 261 (2021). Lo antes discutido, vislumbra que, si un reclamante no reside en nuestra jurisdicción y el demandado prevalece en el pleito, este puede enfrentar dificultades para recuperar los costos que implicó su defensa. Íd. Por ello, la Regla 69.5 de Procedimiento Civil, *supra*, fue promulgada con el fin de "garantizar el pago de las costas, los gastos y los honorarios del abogado en pleitos instados por personas naturales o jurídicas no residentes". Martajeva v. Ferré Morris y otros, *supra*, pág. 622 (citando a Yero Vicente v. Nimay Auto, 205 DPR 126, 130 (2020)). Además, dicha norma tiene el propósito de desalentar litigios frívolos e inmeritorios. Reyes v. Oriental Fed. Savs. Bank, 133 DPR 15, 20 (1993).

**III.**

En el presente caso, el señor León Hernández nos solicitó que revoquemos la *Resolución* del TPI mediante la cual se declaró "No Ha Lugar" la solicitud de desestimación instada por éste. En esencia, el Peticionario argumentó que incidió el foro primario al conferirle legitimación activa a FirstBank, contrario a lo dispuesto en la Sec. 2-301 de la Ley de Transacciones Comerciales, *supra*, y por no haberse presentado prueba que acreditara sus facultades. Además, arguyó que erró el foro *a quo* al no ordenar la prestación de fianza de no residente a Fannie Mae.

Evaluados los señalamientos de error y el derecho aplicable a la controversia, concluimos que no le asiste la razón. Veamos.

Surge del expediente que, el 2 de septiembre de 2022, FirstBank anejó copia del pagaré que evidencia la obligación de pago reclamada en la "**Demanda**". A su vez, aclaró que dicho pagaré estaba disponible para ser inspeccionado, de ser requerido. Por otro lado, el Peticionario sostuvo que FirstBank debió acreditar el acuerdo mediante el cual Fannie Mae le delegó la responsabilidad para proveer el servicio de cobro del préstamo objeto de controversia. En esa línea, sugirió que es de aplicación el contrato de mandato. Como relacionamos previamente, la Ley de Transacciones Comerciales es el estatuto especial que regula el asunto de la legitimación activa en este tipo de casos. A tales efectos, un pagaré endosado en blanco se convierte en un instrumento pagadero al portador, el cual permite a cualquier persona que tenga en su poder el instrumento, a exigir sin más el pago. *Véase*, 19 LPRA sec. 509. Nótese que la referida ley le confiere el derecho de exigir el cumplimiento de cualquier instrumento negociable al tenedor del instrumento, como también, a una persona que no es tenedor, pero está en **posesión** de éste y tiene los derechos de un tenedor. *Véase*, 19 LPRA sec. 601.

En este sentido, los argumentos esbozados por el Peticionario son inmeritorios y subsisten al margen de la ley, puesto que es innecesario un contrato de mandato entre Fannie Mae y FirstBank, para que este último pueda acreditar su legitimación activa. Por el contrario, la Ley de Transacciones Comerciales le otorga expresamente autoridad a FirstBank para instar la causa de acción de cobro de dinero y ejecución de hipoteca, toda vez que está en posesión del pagaré endosado al portador. Incluso, asumiendo que FirstBank no es el tenedor del pagaré, como mínimo, es el cesionario de este y como tal, ostenta igualmente todas las facultades para exigir el pago de lo adeudado. *Véase*, 19 LPRA sec. 553. Así pues, concluimos expresamente que la producción del pagaré en controversia y haberlo hecho disponible para inspección le confiere al Recurrido, cuanto menos, la legitimación activa que la ley requiere en este tipo de casos. Por tanto, el primer error no se cometió.

Como segundo señalamiento de error, el Peticionario interpretó que FirstBank compareció como representante, agente de servicio o contratista independiente de Fannie Mae. En consecuencia, alegó que lo anterior no subsana la cualidad de no residente de Fannie Mae, como dueño del pagaré objeto del litigio, y entidad jurídica foránea.

A poco que examinemos la Regla 69.5 de Procedimiento Civil, *supra*, notamos que es improcedente al asunto que nos ocupa. La disposición legal antes citada establece que cuando la parte **reclamante** resida fuera de Puerto Rico o sea una corporación extranjera, el tribunal requerirá que preste fianza para garantizar las costas, los gastos y los honorarios de abogados a que pueda ser condenada. Sin embargo, habiendo resuelto que FisrtBank tenía legitimación activa para instar la demanda y como única parte reclamante desde el inicio del pleito, colegimos que no erró el foro primario al no requerir fianza al amparo de la aludida norma reglamentaria. FirstBank no ha sido sustituido en el caso de autos ni se ha evidenciado que se ha cambiado su condición de residente de nuestra jurisdicción. Siendo ello así, no procede la desestimación del caso a favor del Peticionario.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el recurso de *certiorari* y *confirmamos* la determinación recurrida.

Se devuelve el caso al foro de instancia para la continuación de los procedimientos consistentes con la presente *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones